Next case is Insight Communications. It's Inductor Commission 411-0355. Counsel, please. Good morning. May I please the court? My name is Jennifer Wolf and I represent the employer, Insight Communications, who is the appellant in this matter. This issue is brought on penalties which we represent were not warranted and that the section 19L, 19K, and attorney's fees under section 16 should be reversed. The commission's award of section 19L compensation is against the manifest weight of evidence because the employer has good and just cause to deny benefits when a treating physician, Dr. Getter, and also an IME physician, Dr. Fletcher, both agree that the employee could return to work without restrictions. Because section 19L compensation is improper, the higher standard required to impose section 19K and section 16 attorney's fees cannot be met. The Illinois Workers' Compensation Commission and the circuit court used an improper lower standard in awarding statutory penalties under sections 19K and 16. Therefore, there should be a de novo review for that issue. The Illinois Supreme Court McMahon indicates the higher standard is that the delay also must be deliberate and the result of bad faith or improper purpose. When an employer acts in reliance upon reasonable medical opinions or when there are conflicting medical opinions, penalties ordinarily are not imposed. The relevant question is does the employer have a reasonable objective belief to do what they did? And that is you're saying that Fletcher provides you. Correct. Not only does Dr. Fletcher provide us that information, but also her own treating family physician, Dr. Getter. The circumstances in this case are in July of 2005, Lowe, the petitioner or the employee, was lifting a ladder onto her truck and she twisted her back and had pain. She worked the rest of that day, which was a half a day, and also finished out the week before she sought any medical treatment. She did go to the ER a few days later because she had continued complaints of pain. The ER diagnosed an acute lumbar sprain. She then saw her family physician, Dr. Getter, after the ER visit. He diagnosed degenerative arthritis, a low back strain, and recommended physical therapy. She meets with Dr. Fletcher, the IME, in September of 2005 when he reviews her case. He believes that she should be off work and requests a work hardening program to be initiated. And insight complies. She also sees Dr. Hebron in this time frame and undergoes some functional capacity evaluations, which one of them shows a positive Waddell sign suggesting that there was exaggeration or malingering. On November 1st, Dr. Hebron's notes, who is a treating physician, notes that Lowe's symptoms are confusing and she won't provide direct answers or direct responses to questions asked. She undergoes some facet joint injections by Dr. Gordon. There are some references to suggest that those helped her pain. There's other references to say that that did nothing. She again sees Dr. Fletcher at the end of November on November 29th, so now this is the third visit that she's had with Dr. Fletcher. He continues to keep her off work. Insight continues to pay benefits and continues to follow Fletcher's direction. Now he's saying, I mean, counsel seems to recognize, passively at least, the opinion of Dr. Fletcher. He seems to be saying as I'm reading this, well, yeah, that's true, but his opinion isn't based on any, it's not supportive of any medical tests. Well, Dr. Fletcher's opinion is supportive by medical. He did an evaluation that she is neurologically intact and that her, the positive Waddell sign in one of the FCEs, the pain exaggerations found in the notes of the work hardening program. Dr. Hebrons notes that her symptoms are very confusing and that she's not responsive to questions that are asked of her. The fact that Lowe was getting better at some of, like the November 8th, 2005 appointment with Fletcher, Lowe was improving at that time frame. And Fletcher then said, you know, as she's getting to the point when she's being returned to work, that's when her condition seems to be getting worse. She testifies that she doesn't take painkillers, although she does have pain. She doesn't take any pain medications. Well, let me ask you this. Does the doctor's medical opinion need to be supported by objective medical tests in order to insulate the employer from the penalty? Is that required in the case law, medical tests? I don't believe that. I think you have to have, it's a reasonable medical opinion. And certainly having a reasonable medical opinion should have some basis in the record to support that so that it's not a thousand doctors are saying that, you know, they broke her back and someone else says, oh, she's completely fine. I think in some instances there perhaps could be some medical opinions that aren't reasonable, but in this case the circumstances don't support that. And that there's significant amount of information that supports Dr. Fletcher's opinion. In fact, her own treating family physician has the same opinion that Dr. Fletcher has, and yet that fact is completely ignored in the arbitrator's decision, which was confirmed by the commission. She saw her treating family physician on December 1st of 2005. He releases her to go back to work and he does not put any restrictions on her. And then he even in his office notes defers to Dr. Fletcher who has another appointment with her in a couple weeks. So Insight continues to pay benefits to the employee because they wanted to wait to see what Dr. Fletcher's opinion was, since that was already scheduled and coming up the end of that month. So by the end of the month on December 27th, 2005, she meets again with Dr. Fletcher. And again, this is already after her family physician has returned her to work and has not placed any restrictions on her. Dr. Fletcher finds that she's neurologically intact, that she's at MMI, that she can return to work, and that there's no restrictions. Insight stops benefits and they're hit with penalties. It's how can they be penalized for providing additional benefits than what they needed to when her own treating physician, which should be given deference over an IME, agrees with the IME. You have Dr. Fletcher's opinion, you have the ER doctor that says it was a back strain, you have her family physician who also diagnosed a low back strain, returned her to work prior to when Dr. Fletcher did. She has exaggerated pain behaviors in some of her work hardening programs. She has positive Waddell signs on functional capacity evaluations. You have another treating physician, Dr. Hebron, who notes that her symptoms are very confusing and she's not responsive to direct questions, she seems evasive. Under all those circumstances, it created a legitimate dispute. They had a good faith belief that the petitioner or the employee was no longer entitled to benefits and they stopped that. To allow penalties to stand requires a complete disregard for her own family physician's opinion that she could go to work and had not placed any restrictions on her. To say that to rely on Dr. Fletcher's opinion was unreasonable and to hit you with penalties because of that completely ignores that her treating physician did the same thing. And under these circumstances, it was reasonable to rely on the family physician and the IME. There's also a lot of conflicting medical opinions out there. Some doctors say she has an SC joint dysfunction, another doctor says no, that's not her problem. So you have all kinds of opinions all over the place. And a family physician and an IME are consistent. It's reasonable to rely on that. There are reasonable opinions. To reach an opposite conclusion is clearly apparent. The statute cannot be construed in a manner which will make the results absurd or unjust. There's a long history here. The injury took place in July of 2005. The arbitration took place in September of 2006. The arbitrator's decision was entered November 20th of 2006, which awarded penalties based solely on that it was unreasonable for the employer to rely on Dr. Fletcher's opinion. We took that to the commission. The commission affirmed. We took that to the trial court. The trial court remanded it saying that you have to have a higher standard, it needs to be reviewed, it has to be of a flagrant, deplorable, and posterous nature and not simply unreasonable. Petitioner's attorney Lowe then tried to bring that decision to this court. He lacked jurisdiction and sent it back down. It went to the commission who remanded it based on the trial court's mandate. The arbitrator then modified the decision to say unreasonable or vexatious. And now all of a sudden that's created the higher standard. They didn't change any of the other findings which were written throughout the record. Basically the entire decision or the order explains why or just mentions that it was unreasonable to rely on Dr. Fletcher's opinion. It doesn't say anything about being unreasonable to rely on the ER doctor, the work conditioning statements that she was exaggerating pain, that there was a positive Waldell sign, that her family physician also had the same opinion as Dr. Fletcher. Those are completely ignored. And you can't ignore those and have the decision stand. This was a legitimate dispute. Merely adding or vexatious to the opinion doesn't create the higher standard which is required in order to implement penalties based on 19K and Section 16 attorney's fees. Because the 19L fees can't even stand because they do have the good and just cause to have stopped benefits based not only on the treating physician's opinion, which happened three weeks earlier than when they stopped benefits, and the IME physician's opinion. Therefore, if there's no further questions based on the arguments contained in the brief, the 19L should be reversed as against the manifest weight of the evidence because you can't ignore Dr. Getter's opinions. And 19K and 16 should be reversed because it was an improper lower standard and the record does not support such an award. And in the alternative, 19K and Section 16 penalties should be reversed as against the manifest weight of evidence. Thank you, counsel. Counsel, please. Okay, please, the court. Good morning, your honor. Good morning, counsel. The employer argued... What is your name? Oh, I'm sorry. I'm Andrew Ritchie. I'm representing Kimberly Lowe. Did you sign in with the clerk? Yes. Your name doesn't show up on the sheet. Did I sign the wrong place? I'm sorry, may I approach? You signed in downstairs? Yeah, the clerk's office. Okay. Can I have you spell your name again, please? R-I-C-C-I. Please proceed. The employer argues that this should be a de novo review. That is not the proper standard. The question of the reasonableness of the employer cutting off benefits is a question of fact for the commission. In order to reverse that, the employer has to show that the commission's decision is against the manifest weight of the evidence. At the time that they cut off the benefits, did they have the opinion of Dr. Fletcher? Yes. Dr. Fletcher in December, I believe it was December 26th of 2005, stated that she could return back to work full duty. And at that point in time, that went against the opinion of the FCE, because the FCE stated. Did they also have the ñ when did the opinion of Dr. Getter come out? That was on December 1st, 2005. But Dr. Getter did not state that ñ what Dr. Getter stated was that she could go back to work tomorrow, but Dr. Fletcher has her off work for three weeks, so he was going to defer to Dr. Fletcher's opinion. So why couldn't they rely on Dr. Fletcher's opinion to cut off the benefits? Well, because Dr. Fletcher's opinion was based off of ñ was based off of nothing, really, because she was still having symptoms at that time, and the FCE stated that she was only able to work medium duty work. Did Fletcher personally ñ didn't he conduct a physical examination of the clinic? Yes, that is correct. And he looked at the FCE tests, and didn't he look at the MRI films? Yes, and that's one of the reasons why his opinion is unreasonable, because the MRI ñ Wait a minute. Whether his opinion is reasonable or unreasonable is not the issue. The issue is, could the insurance carrier in good faith rely on that opinion? Where is the reason why they couldn't? Now, it may very well turn out to be a bad opinion, and there certainly is stuff within his deposition that suggests that it was somewhat deficient, but that's not what we're here for. We're here to determine whether a reasonable insurance carrier could rely on that opinion. So tell me why they couldn't. Well, if you look at the MRIs, the MRIs in 2005 and ñ the MRI in 2000 and the MRI in 2005 are completely different. Wait a minute. Are the insurance carriers doctors? Well, no, but they can look at the MRI reports. I mean, if the MRI report says one thing, and Dr. Fletcher is saying it says something completely different, then he's lying. We see that in every case, and they're not necessarily lying. Well, either he's lying or he's not looking at the report, or, I mean, I don't know. You want them to make a value judgment of the opinion. The only thing that's required is that they have a good faith basis to rely on. He gave the opinion. He examined them. He told them that he examined all of these MRI reports. I'm at a loss to understand why they couldn't rely on it. Well, the employer has the same medical records that we have, and if the employer looks at the medical records showing that she's still having symptoms and showing that the MRI reports are completely different from 2000 and the MRI in 2005 and they can't rely on them, also you have to take into account that earlier, in Dr. Fletcher's earlier report, he stated that this condition was caused by a work accident. All of a sudden, he's changing his opinion in December of 2006 and 2005 for basically no reason. How can the employer rely on an opinion that's basically completely different than what he was saying earlier, and it's based on no medical evidence to support it? I would also like to point out that the employer mentions that she had a positive Waddell sign. I was looking through the commission's transcript yesterday. I could not find that on November 7th of 2005 that she had a positive Waddell sign. I'm not saying that it's not there, but I could not find that anywhere. What I saw was that the FCE showed that there were no signs of submaximal effort and that there were no signs of symptom magnification. Didn't Dr. Getter, in a manner of speaking, support and reach the same conclusion that Fletcher did? Dr. Getter basically deferred his opinion to Dr. Fletcher. The employer can't base their denial of benefits based on that doctor's deferral of the opinion. In this case, they didn't rely on Dr. Getter's opinion to deny benefits because they didn't deny benefits on December 2nd. They did not deny benefits until December 26th of 2005. This is basically after the fact where they're saying that they're relying on Dr. Getter's opinion. Dr. Getter reached the same conclusion on December 2nd, 2005, did he not? Well, he basically says the employer can go back to work the next day, but Dr. Fletcher took her off for three weeks, so he's going to defer the work status to Dr. Fletcher. Well, even assuming that... Did he release her to return to work on December 2nd? I'm sorry, what? Getter released her to return to work on December 2nd, didn't he? Well, he said he was going to defer the work status to Dr. Fletcher. He didn't release her to return to work on December 2nd, or didn't he? I would say that he didn't because he said that Dr. Fletcher had her off for three weeks, so he was going to defer to Dr. Fletcher's opinion. And I would like to point out that even assuming that it was reasonable to rely, in December 2005, that it was reasonable to cut off benefits, the employer ignores the fact that Dr. Ben-Yamin in February of 2006 also took her off. Dr. Ben-Yamin took her off work in February of 2006. So even assuming that an employer can rely on Dr. Getter's opinion, even assuming they can rely on Dr. Fletcher's opinion, in February of 2006, Dr. Ben-Yamin took an employer off of work, and they did not... Two doctors say this, another doctor says something else, and that means they can't rely on their doctors because somebody else said something else. That seems to be what you're suggesting. Well, I mean, the employee was no longer treating with Dr. Getter at that point in time. She was treating with Dr. Ben-Yamin, so they had... See, it's not a matter of Dr. Getter and Dr. Fletcher versus Dr. Ben-Yamin, because that, again, Dr. Getter deferred his opinions of the work status to Dr. Fletcher. Dr. Getter, they can't rely on the deferral of another doctor to Dr. Fletcher, and they weren't in this case. The doctor says, she can return to work, but Fletcher's still got some issues with her, so I'm going to defer to Fletcher. That's exactly what he did. He turned around and said, she can go back to work, but Fletcher's got some issues with her, so on that issue, I'll defer to Fletcher. And Fletcher, two weeks later, says what? Nothing wrong with she going to work. And you talk about your Dr. Ben-Yamin, that's February of 2006. She sees Fletcher again in May of 2006, and in May of 2006, he still says she has no neurological deficits. So what is the problem here? But the MRI shows that there is a neurological... Wait a minute. That's... Look, no one is suggesting that necessarily Fletcher was correct. The issue here is whether they could rely on it in good faith. You've got them held to the standard of doctors. You don't want them to examine... You want the insurance adjusters to examine the MRIs. That's what they hired Fletcher for, and he comes with an opinion. These are penalties we're talking about now. We're not talking about whether she was injured out of the scope of her employer or the nature and extent of her injury. We're saying did they act unreasonably, vexatiously? That's a pretty high standard. Well, that is a question of fact for the commission, because the question of whether the employer acted unreasonably, that's a question of fact. Well, the facts are what they are. Fletcher's opinion is what it is. Getter did what he did. Well, I think you have to look at what Fletcher bases his opinion on, and you also have to look at the fact that earlier he said that the condition was caused by the work activity. Now all of a sudden he changes his mind and says that it's not based on the work activity because the MRI in 2000 and the MRI in 2005 look the same when they clearly do not look the same. Put this in the real world. Here's what I'm struggling with to be very blunt. They hire Fletcher. Fletcher gives them an opinion that she can go back to work, she doesn't have any problems. What would they do then in your ideal world to avoid then a penalty? They're supposed to say, aha, the doctor we hired is wrong. We have decided now Fletcher was wrong. We've looked at everything, and we know lay people more than Fletcher. Therefore, forget about Fletcher. We're wrong. What are they supposed to do? Pay benefits. Ignore their own doctor's opinion and pay benefits. Yes, when their own doctor's opinion is unreasonable. Well, how do you know that? Hold on. If their doctor wrote an opinion and says she can go back to work, how do you know that? I consulted with the entrails of chickens. Maybe then they have no basis to rely on it. But when the guy says I looked at the MRIs, I examined the woman, she's capable of going back to work, no neurological deficit, I don't see how you can make an open argument that they can't reasonably rely on that. But there is a neurological deficit. The medical records show that. That's unsupported by the medical records. I should take my own advice and not beat dead dogs. Go ahead. Go ahead. Oh, the employer also mentions that Dr. Hebron's records support their denial of benefits, but Dr. Hebron agrees that the MRI in 2005 shows an annular tear and a disc bulge. And, again, Dr. Fletcher's opinion is not supported by the medical records. The medical records show that there was an annular tear and a disc bulge in 2005, and then at the MRI in 2006 there was also a disc herniation. Dr. Fletcher's opinion is simply unsupported by the medical records. I think we've got the argument, Tom. The employer also argues that they gave additional benefits than what was required of them, but even assuming that they did not have to pay benefits after Dr. Fletcher's December 26, 2005 release to work, they ignore the fact that Dr. Benjamin in February did take her off work, and even assuming that they're not doctors and they wouldn't be able to tell that Dr. Fletcher's opinion is unreasonable until after the cross-examination in July of 2006, the fact remains that they didn't start up benefits again after that cross-examination. Even though they had that cross-examination, which demonstrates that Dr. Fletcher's opinion is completely unreasonable, they still do not continue benefits. I mean, Dr. Fletcher says in this cross-examination at one point that the reason that the doctor in 2000 didn't mention annular tears in his report was because the word annular tear was out of vogue, but in that Emmerheim report of 2000, it states in there that the radiologist put that there were no signs of annular tear. So, I mean, I can't say that Dr. Fletcher is lying, but I can say that his opinion clearly, there's no support in the medical records for his opinion. The employer requests that the circuit court, that the court affirm the circuit court's opinion and affirm the commission's decision awarding penalties. And thank you, Your Honor. The panel, please. Your Honor, when an improper or the wrong legal standard is used, this court does have to know where we view. And we surmise that the commission and the arbitrator and the circuit court all used a lower standard for the Section K and 16 penalties. And if they are deemed to have used the appropriate standard, it's all the suggestions with her family physician's opinion, which is consistent with Dr. Fletcher's, and Dr. Fletcher's opinion didn't change later. Getter's opinion didn't change later. Those all support a reasonable basis to have a disputed claim, a legitimate dispute, and a good faith belief and reason to stop benefits. The FCE dated November 7, 2005, found in the supplemental record C-126 under the second bullet for validity says Waddell signs negative for 4 slash 5. By inference, you would have one positive Waddell sign based on the FCE of November 7, 2005. Moreover, the FCEs, which were also present at the time Dr. Getter released her to work, and he did release her to return to work, and he did not place any restrictions upon her as he had in the past, had given some restrictions. So without having given restrictions implies that there are no restrictions. The FCEs, again, put her at upper end of medium work. You're almost at full heavy duty. So for Fletcher, he's not bound by the FCE and has to go with what that is because there were some pain exaggerations. There were a positive Waddell sign. There was his own examination. And it's not the time when you've got an IME that just comes in, spends two seconds with her, and says, yeah, this is not a compensable claim. Don't even pay anything. He met with her over a number of months and had benefits, insisted on benefits being done. So again, they shouldn't be punished and penalized for holding open benefits longer than they were required to. And we ask that the court reverse the prior decisions on the penalties. Of course, we'll take the matter under advisement for disposition.